## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

ANGELA DAWN HOLBERT,

      Plaintiff,

v.                            Case No.: 2:15-cv-11550

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' briefs wherein they both request judgment in their favor. (ECF Nos. 10, 13).

Having fully considered the record and the arguments of the parties, the undersigned United States Magistrate Judge respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 10), to the extent that it requests remand of the Commissioner's decision; **DENY**

Defendant's request to affirm the decision of the Commissioner, (ECF No. 13); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g); and **DISMISS** this action from the docket of the Court.

## I.    <u>Procedural History</u>

On September 16, 2011, Plaintiff Angela Dawn Holbert ("Claimant") protectively filed an application for DIB, alleging a disability onset date of August 23, 2011 due to "neck injury, depression, tendonitis in right shoulder, back pains, deteriorating disc disease, heel spur syndrome, arthritis in left knee, dyslexia, thyroid problems, [and] high blood pressure." (Tr. at 525-26, 546). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 426, 438). Claimant subsequently filed a request for an administrative hearing. (Tr. at 445). An initial hearing was held on June 19, 2013 before the Honorable Jack Penca, Administrative Law Judge. (Tr. at 372-78). The hearing was adjourned so that Claimant could undergo a physical consultative examination. (Tr. at 377). The administrative hearing resumed on January 3, 2014 before the Honorable William R. Paxton, Administrative Law Judge ("the ALJ"). (Tr. at 379-421). By written decision dated January 28, 2014, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 348-65). The ALJ's decision became the final decision of the Commissioner on August 10, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 8 & 9). Thereafter, Claimant filed a Brief in Support of Judgment on the Pleadings, (ECF No.

10), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 13), to which Claimant filed a reply, (ECF No. 14). Consequently, the matter is fully briefed and ready for resolution.

## II.   Claimant's Background

Claimant was 38 years old at the time she filed the instant application for benefits, and 41 years old on the date of the ALJ's decision. (Tr. at 365, 526). She has a high school education and communicates in English. (Tr. at 545, 547). Claimant has previously worked as a cook and dishwasher at a restaurant. (Tr. at 548).

## III.   Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at every level in the administrative review," including the review performed by the ALJ. 20 C.F.R. § 404.1520a. First, the ALJ evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If such impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's

4

impairment(s), the ALJ determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual function. *Id.* § 404.1520a(d)(3).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for disability insurance benefits through December 31, 2016. (Tr. at 350, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since August 23, 2011, her alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "obesity; degenerative disc disease of the cervical, thoracic, and lumbar spine; status-post bilateral carpal tunnel release; obstructive sleep apnea; osteoarthritis of the knees; lumbar compression fracture; right tibial and peroneal neuropathy; major depressive disorder; prescription drug dependence; personality disorder; and pain disorder." (Tr. at 350-53, Finding No. 3). The ALJ considered and found non-severe Claimant's hypertension, shingles, varicose veins, and stress incontinence. (Tr. at 353).

5

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 353-56, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can sit for two hours a [*sic*] time, stand for one hour at a time, and walk for one hour at a time. The claimant can sit for a total of four hours in an eight-hour workday, stand for two hours in an eight-hour workday, and walk for two hours in an eight-hour workday. The claimant can use her feet to operate foot controls continuously (defined as over two-thirds of the workday). The claimant can occasionally reach overhead with the upper extremities and frequently reach in other directions with the upper extremities. She can frequently (defined as one-third to two-thirds of the workday) perform handling, fingering, feeling, and pushing and pulling with the left hand. She can continuously perform handling, fingering, and feeling with the right hand, and frequently push and pull with the right hand. The claimant can never climb ladders, ropes or scaffolds, kneel, crouch, or crawl. The claimant can occasionally climb ramps and stairs, balance and stoop. The claimant can occasionally (defined as up to one-third of the workday) tolerate unprotected heights and vibration. She can tolerate frequent exposure to moving mechanical parts. The claimant can continuously operate a motor vehicle and tolerate continuous exposure to humidity and wetness, dusts, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. The claimant can understand, remember, and carry out simple instructions and occasionally interact with the public.

(Tr. at 356-63, Finding No. 5). At the fourth step, the ALJ found that Claimant was unable to perform her past relevant work. (Tr. at 363, Finding No. 6). Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine her ability to engage in substantial gainful activity. (Tr. at 363-64, Finding Nos. 7-10). The ALJ considered that (1) Claimant was born in 1972 and was defined as a younger individual on the alleged disability onset date; (2) she had at least a high school education and could communicate in English; and (3) transferability of job skills was not material to the disability determination because the

6

Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of transferable job skills. (Tr. at 363, Finding Nos. 7-9). Given these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ concluded that Claimant could perform jobs that existed in significant numbers in the national economy, including unskilled work as a security monitor or grader/sorter at the sedentary exertional level. (Tr. at 363-64, Finding No. 10). Therefore, the ALJ found that Claimant was not disabled as defined in the Social Security Act and was not entitled to benefits. (Tr. at 364, Finding No. 11).

## IV.    __Claimant's Challenges to the Commissioner's Decision__

Claimant raises two challenges to the Commissioner's decision. First, Claimant asserts that the ALJ failed to include limitations related to Claimant's moderate difficulty in maintaining concentration, persistence, or pace in the RFC finding and the controlling hypothetical question posed to the vocational expert at the administrative hearing. (ECF No. 10 at 10). Claimant points out that the ALJ found at step three that Claimant experienced moderate difficulty in maintaining concentration, persistence, or pace; however, Claimant argues that the ALJ inadequately attempted to account for this limitation in the RFC finding by restricting Claimant to work that required only the ability to understand, remember, and carry out simple instructions. (*Id.*) According to Claimant, work that involves the understanding and carrying out of simple instructions still requires the ability to stay on task, which Claimant indicates she is incapable of doing. (*Id.* at 11). Claimant avers that the ALJ erroneously found that she could perform jobs that would require her to maintain concentration, keep a pace, or meet a quota. (*Id.*) In support of her position, Claimant cites the United States Court of Appeals for the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). (*Id.* at 10).

In her second challenge, Claimant contends that the ALJ erred in assessing her credibility. (*Id.* at 12). Claimant asserts that she provided "specific and detailed testimony regarding her functional limitations," yet, the ALJ found her less than fully credible without performing a sufficient credibility analysis. (*Id.* at 13). Claimant points out that her mother provided corroborating testimony at the administrative hearing. (*Id.*) She argues that the ALJ was mistaken in discounting her credibility as a result of her reported daily activities because she testified that she could only perform those activities when she felt physically and mentally able. (*Id.*) Moreover, Claimant insists that the ALJ failed to consider the duration, frequency, intensity, and aggravation of her symptoms; the effectiveness and side effects of her medications; and any other treatment that she had received for her pain or other symptoms. (*Id.* at 14). Overall, Claimant argues that the ALJ "impermissibly relied on the absence of objective proof of [her] subjective symptoms to discredit her testimony and allegations." (*Id.*) According to Claimant, if the ALJ had appropriately evaluated her credibility, then additional limitations would have been included in the RFC finding, and those limitations would have precluded her from working. (*Id.* at 15).

In response, the Commissioner contends that the ALJ "carefully evaluated all of the medical evidence and discussed why, based on the record, the RFC did not warrant other additional, specific concentration, persistence, or pace limitations." (ECF No. 13 at 20). For example, according to the Commissioner, the ALJ found Claimant's mental impairments improved with medication and therapy, and that Claimant did not receive regular mental health treatment until September 2012. (*Id.*) The Commissioner also asserts that Claimant's mental status examinations were mostly normal and that those examinations revealed that Claimant retained normal concentration, persistence, and

pace. (*Id.*) The Commissioner insists that *Mascio* is distinguishable from this case because the ALJ here included limitations related to Claimant's mental impairments in the RFC finding and explained why Claimant's moderate limitation in concentration, persistence, or pace did not require any restriction other than work with simple instructions. (*Id.* at 21).

With respect to Claimant's second challenge, the Commissioner argues that the ALJ conducted a proper credibility analysis and appropriately compared Claimant's testimony with the objective medical evidence. (*Id.* at 21-22). The Commissioner asserts that the ALJ thoroughly discussed Claimant's subjective symptoms and accurately found Claimant's allegations to be partially credible based on the lack of objective medical findings supporting her claims. (*Id.* at 23-25). Furthermore, the Commissioner insists that there was no evidence demonstrating Claimant experienced negative side effects from her medication. (*Id.* at 25). To the contrary, the Commissioner contends that Claimant's physical symptoms were somewhat relieved by treatment, and she was psychiatrically stable on her medications. (*Id.*) Lastly, the Commissioner argues that the ALJ largely credited Claimant's testimony by "generous[ly]" crafting the RFC finding. (*Id.* at 26).

In her reply memorandum, Claimant focuses on her first challenge to the Commissioner's decision. Claimant maintains that the ALJ failed to explain how limiting Claimant to simple instructions accounted for her moderate limitation in concentration, persistence, or pace. (ECF No. 14 at 4). Claimant points out the vocational expert testified at the administrative hearing that a person who "would be off task for completing even routine and repetitive tasks" would not be able to perform the jobs that the ALJ ultimately found Claimant could perform. (*Id.* at 5).

## V.   <u>Relevant Medical History</u>

The undersigned has reviewed all of the evidence before the Court. The medical records and opinion evidence most relevant to this PF & R are summarized as follows.

### A. Treatment Records

On February 9, 2012, Claimant visited Brenda Tebay, M.A., at the Jefferson Health and Wellness Center for complaints of sadness and anxiety. (Tr. at 777). Claimant reported feeling depressed, nervous, worried, hopeless, and frustrated. (*Id.*) She informed Ms. Tebay that she had difficulty sleeping, concentrating, and remembering things. (*Id.*) Upon examination, Ms. Tebay observed that Claimant's mood was frustrated and depressed, and her affect was sad and tearful. (*Id.*) Claimant's behavior and attitude at the appointment were normal. (*Id.*) Ms. Tebay recorded that Claimant's thought process, thought content, and insight were normal or intact. (*Id.*) Ms. Tebay diagnosed Claimant with depressive disorder, not otherwise specified; and anxiety disorder, not otherwise specified. (*Id.*) She assigned a Global Assessment of Functioning ("GAF") score of fifty-five.[1] (Tr. at 778).

On July 16, 2012, Claimant returned to Ms. Tebay reporting that she felt depressed. (Tr. at 882). Claimant indicated that she slept often, but still felt exhausted. (*Id.*) She stated that she experienced persistent worry, loneliness, anxiety, racing thoughts, and low self-esteem. (*Id.*) Upon examination, Claimant was cooperative with adequate eye

---

[1] The Global Assessment of Functioning ("GAF") Scale is a 100-point scale that rates "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," but "do[es] not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic Statistical Manual of Mental Disorders*, Am. Psych. Assoc., 32 (4th ed. 2002) ("DSM-IV"). On the GAF scale, a higher score correlates with a less severe impairment. The GAF scale was abandoned as a measurement tool in the latest edition of the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-5"), in part due to its "conceptual lack of clarity" and its "questionable psychometrics in routine practice." DSM-5 at 16. A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

contact. (*Id.*) Ms. Tebay observed that Claimant's affect was sad and tearful. (*Id.*) Claimant's thought process, thought content, and insight were normal or intact. (*Id.*) Claimant's diagnosis and GAF score remained unchanged from her prior visit. (*Id.*)

On August 23, 2012, Claimant was admitted to Camden Clark Memorial Hospital after reporting suicidal ideation. (Tr. at 1051). She indicated that she had been depressed "forever" and contemplated driving her car off of the road. (*Id.*) Claimant informed David Farris, D.O., that she experienced crying spells and suicidal thoughts, but had never attempted suicide. (*Id.*) She also described feelings of hopelessness, sadness, and frustration. (*Id.*) Claimant denied receiving any previous inpatient or outpatient treatment for mental health and reported that she was sent to Camden Clark by Ms. Tebay. (*Id.*) Upon mental status examination, Claimant was cooperative with good eye contact. (Tr. at 1053). Dr. Farris recorded that Claimant was alert and oriented with normal speech. (*Id.*) Claimant's mood was depressed, and her affect was congruent. (*Id.*) Dr. Farris noted that Claimant's thought process was logical and her cognitive function was grossly intact. (*Id.*) Claimant stated that her suicidal ideation was low, and she denied any hallucinations. (*Id.*) Dr. Farris determined that Claimant possessed fair judgment with limited insight. (*Id.*) He assigned a GAF score of thirty, which indicates that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." DSM-IV at 34; (Tr. at 1053). Claimant was diagnosed with depressive disorder, not otherwise specified, rule out major depression recurrent; opiate abuse; and features of cluster B personality disorder. (Tr. at 1053). Dr. Farris determined that Claimant would be observed in a safe and secure environment in

the behavioral health unit, where she would attend individual and group counseling sessions. (*Id.*)

Claimant was discharged from Camden Clark Memorial Hospital on September 4, 2012. (Tr. at 1049). Claimant's discharge diagnosis was depressive disorder, not otherwise specified, rule out substance induced mood disorder; depressed, secondary to sedatives and opiates; sedative hypnotic dependence; opiate dependence; chronic pain with both psychological and physical factors; and personality disorder, not otherwise specified, features of cluster B and C. (*Id.*) Dr. Farris assigned Claimant a GAF score of fifty-five. (*Id.*) Dr. Farris noted that Claimant reported being overwhelmed by situations in her home setting with family members and her chronic medical conditions. (Tr. at 1049-50). He observed that Claimant's symptoms eased with medication, including Neurontin, Klonopin, Atarax, and Celexa. (Tr. at 1050). At discharge, Claimant had an improved mood, and she denied depression and suicidal ideation. (*Id.*) Dr. Farris opined that Claimant's prognosis was fair with continued outpatient treatment. (*Id.*)

On September 7, 2012, Claimant visited Westbrook Health Services for a clinical assessment performed by Jean Vreyens, a licensed social worker. (Tr. at 951, 958). Claimant described feeling depressed, anxious, hopeless, nervous, confused, fatigued, tearful, irritable, despondent, and panicked. (*Id.*) Claimant denied any experiencing any suicidal ideation or hallucinations. (*Id.*) At the time of the appointment, Claimant was taking Celexa for her depression and Klonopin for her anxiety. (Tr. at 953). Upon examination, Claimant's mood was depressed, and her affect was flat. (Tr. at 954). She was cooperative with pressured speech and normal motor activity. (*Id.*) Her thought process was logical, and her judgment was intact. (Tr. at 955). Claimant was assessed with depressive disorder, not otherwise specified; opioid dependence; and personality

disorder, not otherwise specified. (Tr. at 956). She was assigned a GAF sore of fifty-eight. (Tr. at 957).

On September 14, 2012, Claimant treated with Gongqiao Zhang, PA-C, at Westbrook Health Services. (Tr. at 949-50). Mr. Zhang recorded that Claimant had been doing well after her discharge from Camden Clark Hospital. (Tr. at 949). Claimant denied experiencing significant low mood, depression, or episodes of mania. (*Id.*) Upon examination, Claimant was cooperative with normal behavior and speech. (Tr. at 950). Mr. Zhang observed that her mood was euthymic, and her affect was full and appropriate. (*Id.*) Claimant's thought process and thought content were normal, and her attention and concentration were intact. (*Id.*) Mr. Zhang noted that Claimant's insight and judgment were fair. (*Id.*) He opined that Claimant was stable on her medications, and he prescribed refills for Celexa and hydroxyzine pamoate. (*Id.*)

Claimant again saw Mr. Zhang, who was supervised by Dr. Amelia McPeak, on October 12, 2012. (Tr. at 944). Upon mental status examination, Claimant was oriented in all spheres with a cooperative attitude and normal speech. (Tr. at 946). Mr. Zhang remarked that Claimant's mood was slightly depressed and that her affect was mildly constricted. (*Id.*) Claimant's thought process, thought content, and perception were normal. (*Id.*) Mr. Zhang observed that Claimant's concentration and attention were intact. (*Id.*) He also recorded that Claimant's memory was intact, and her insight and judgment were fair. (*Id.*) He diagnosed Claimant with major depressive disorder, recurrent, severe, without psychotic features; chronic pain, with both psychological and physical factors; opioid dependence, by prescription drugs; and sedative/hypnotic dependence, by prescription drugs. (Tr. at 947). Mr. Zhang assigned a GAF score of fifty-

five, and he prescribed Wellbutrin in place of Celexa, which Claimant stated was not working. (*Id.*)

On November 8, 2012, Claimant returned to Westbrook Health Services reporting that she had not slept in three days. (Tr. at 935). Claimant indicated that she felt like she could not handle her medical and family problems. (*Id.*) She described increased depression and anxiousness as well as suicidal thoughts with a plan. (*Id.*) Upon examination, Claimant's mood was sad, and her affect was tearful. (Tr. at 936). Claimant's thought content revealed suicidal ideation. (*Id.*) Her memory, insight, speech, sociability, and thought process were normal or intact. (*Id.*) Claimant was diagnosed with major depression, recurrent, severe without psychosis, and she was provided a GAF score of forty, which means "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV at 34; (Tr. at 936). Claimant was prescribed Lexapro and trazodone. (Tr. at 937). She was placed on suicide watch and instructed to attend group therapy. (*Id.*) Claimant was discharged the following day. At discharge, Claimant's condition improved, with no suicidal ideation. (Tr. at 934).

On November 14, 2012, Claimant again visited Mr. Zhang. (Tr. at 942). Mr. Zhang noted that Claimant was hospitalized on November 8 and left against medical advice one day later because she could not go without her pain medications. (*Id.*) Claimant reported that she was taking Lexapro and trazodone, and she was doing "pretty well." (*Id.*) Upon examination, Mr. Zhang noted that Claimant's mood was euthymic, and her affect was full and appropriate. (*Id.*) Claimant's thought content, thought process, and perception

were all normal. (*Id.*) Dr. Zhang observed that Claimant's attention and concentration were intact. (*Id.*) Claimant's insight and judgment were fair. (*Id.*) Mr. Zhang opined that Claimant was stable on her medications and that no medication changes were required. (Tr. at 942-43).

Claimant continued to treat with Mr. Zhang throughout 2013 and early 2014. In January 2013, Claimant denied significant low mood, depression, or symptoms of mania. (Tr. at 938). Mr. Zhang observed that Claimant's mood was euthymic, and her affect was full and appropriate. (*Id.*) Claimant's thought content, thought process, perception, insight, and judgment were normal. (*Id.*) Mr. Zhang observed that Claimant's concentration and attention were intact. (*Id.*) Claimant remained stable on her medications, and no changes to her medication regimen were made. (Tr. at 939). At her next appointment in March, Claimant informed Mr. Zhang that she had been feeling depressed. (Tr. at 1036). Claimant's mood was depressed, and her affect was constricted; otherwise, Mr. Zhang's findings from the January 2013 visit remained the same. (*Id.*) Mr. Zhang increased Claimant's Lexapro dosage. (Tr. at 1037).

In April, Claimant reported that she was doing better, but had difficulty sleeping. (Tr. at 1033). Mr. Zhang's mental status examination findings were unremarkable, and he increased Claimant's hydroxyzine dosage. (Tr. at 1033-34). The following month, Claimant reported occasional crying spells. (Tr. at 1118). Mental status examination findings remained unremarkable, and Mr. Zhang opined that Claimant was stable on her current medications. (Tr. at 1118-19). In June, Claimant indicated that she was doing well on her current medications, and Mr. Zhang agreed that Claimant was stable. (Tr. at 1234-35). In August, Claimant informed Mr. Zhang that Lexapro was no longer working and that she was experiencing depression and crying spells. (Tr. at 1237). Mr. Zhang

prescribed Cymbalta and continued Claimant on trazodone and hydroxyzine. (Tr. at 1238). At her next appointment in September, Claimant's symptoms had improved, and a mental status examination was normal. (Tr. at 1239). Mr. Zhang opined that Claimant was stable on her current medications. (Tr. at 1240). At her November visit, Claimant indicated that she had fallen and broken her back. (Tr. at 1241). Claimant was using a walker to ambulate. (*Id.*) She reported that she was stable on her current medications, and Mr. Zhang concurred. (Tr. at 1241-42).

On January 14, 2014, Claimant informed Mr. Zhang that her back continued to hurt and prevented her from sleeping well. (Tr. at 1431). Mr. Zhang's mental status examination findings were unremarkable, and he opined that Claimant was psychiatrically stable. (Tr. at 1432). Claimant's medication regimen remained the same.

## B. Evaluation and Opinion Evidence

On December 2, 2011, Paul Dunn, Ph.D., completed a Mental Status Evaluation Consultative Report for the West Virginia Disability Determination Service. (Tr. at 746-50). Dr. Dunn noted that Claimant was casually dressed with appropriate grooming and hygiene. (Tr. at 746). She walked with an antalgic gait. (*Id.*) Dr. Dunn administered the Beck Depression Inventory, Second Edition, which revealed that Claimant had significant signs and symptoms of depression, including mild pessimism, self-criticalness, suicidal ideation without plan or intent, dysphoria, crying spells, fatigue, concentration difficulty, anhedonia, and feelings of worthlessness, irritability, and guilt. (Tr. at 747). Although Claimant reported on the Beck Depression Inventory that she slept most of the day, she informed Dr. Dunn that she only slept an average of five hours each night after taking Ambien. (*Id.*) Claimant also reported that she had gained thirty pounds in the preceding year. (*Id.*) She denied ever receiving treatment from a mental health professional;

however, she indicated that she was prescribed psychotropic medications for her depression. (Tr. at 748).

On examination, Dr. Dunn noted that Claimant's motor activity and energy level were average. (*Id.*) Claimant's facial expression was sad throughout the examination, and she cried at times. (*Id.*) Dr. Dunn observed that Claimant's mood was depressed and her affect was flat to labile. (*Id.*) He recorded that rapport was established with some difficulty and that Claimant was cooperative. (*Id.*) Claimant's speech was clear and coherent, and she was oriented to place, time, and circumstance. (Tr. at 748-49). Dr. Dunn determined that Claimant's thought process, thought content, perception, concentration, immediate memory, persistence, and pace were within normal limits. (Tr. at 749). Her recent memory was severely deficient, and her remote memory was moderately deficient. (*Id.*) Dr. Dunn also concluded that Claimant's judgment was mildly deficient. (*Id.*) He opined that Claimant's social functioning was within normal limits during the evaluation, but he noted that Claimant reported she did not socialize much. (*Id.*) With respect to daily activities, Claimant indicated that when she awoke, she ate and took pain medication. (*Id.*) She then washed dishes, cleaned the house, and bathed if she were going to the grocery store or a doctor's appointment. (*Id.*) The remainder of the day, Claimant watched television. (*Id.*)

Dr. Dunn diagnosed Claimant with pain disorder associated with both psychological factors and a general medical condition; and depressive disorder, not otherwise specified, secondary to medical condition. (*Id.*) Dr. Dunn recorded that Claimant "has a reactive depression to the medical condition and her decrease in functional abilities [is] typical of chronic pain." (Tr. at 750). He assigned a GAF score of sixty-five, which indicates "[s]ome mild symptoms (e.g., depressed mood and mild

insomnia) OR some difficulty in social, occupation, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34; (Tr. at 750). Dr. Dunn concluded that Claimant's prognosis was good if she could receive medical treatment to decrease her pain condition. (Tr. at 750).

On December 21, 2011, Chester Frethiem, Psy.D., completed a Psychiatric Review Technique. (Tr. at 753-65). He opined that Claimant's depressive disorder and pain disorder were non-severe. (Tr. at 753, 756, 759). Dr. Frethiem concluded that Claimant had no limitation in activities of daily living and mild limitations in maintaining social functioning as well as maintaining concentration, persistence, or pace. (Tr. at 763). He indicated that Claimant had no episodes of decompensation of extended duration. (*Id.*) Dr. Frethiem noted that the evidence did not establish the presence of the paragraph "C" criteria for Listing 12.04. (Tr. at 764). In the Consultant's Notes section of the form, Dr. Frethiem summarized the findings of Dr. Dunn's examination. (Tr. at 765). Dr. Frethiem also noted that Claimant stated in her Adult Function Report that she was able to wash dishes, clean the house, and take medication without reminders; however, Claimant also reported problems with her memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (*Id.*) Dr. Frethiem opined that Claimant's allegations were "mostly" physical and that her "mental health allegations [were] mostly credible but yield[ed] only a non-severe rating." (*Id.*)

On January 27, 2012, Karl Hursey, Ph.D., completed a Case Analysis. (Tr. at 768-69). After reviewing the file, Dr. Hursey affirmed Dr. Frethiem's assessment as written. (Tr. at 768). Dr. Hursey concluded that the new medical evidence submitted by Claimant did not affect the earlier assessment. (*Id.*)

18

On March 19, 2012, John R. Atkinson, Jr., M.A., performed a mental status examination to determine Claimant's eligibility for Medicaid benefits. (Tr. at 965). Mr. Atkinson described Claimant as frank and candid, but somewhat digressive and rambling. (*Id.*) She was cooperative with a normal posture and gait. (*Id.*) Claimant indicated that she was disabled as a result of her depression, shingles, knee problems, arthritis, tendonitis, degenerative disc disease, high blood pressure, thyroid issues, hernia, and neck and back problems. (*Id.*) As for her particular mental health symptoms, Claimant reported that she experienced insomnia, terminal awakening, occasional hypersomnia, fatigue, low energy, obsessive thoughts or preoccupations, and feelings of worry, depression, anxiety, irritability, impatience, and not wanting to do anything or go anywhere. (Tr. at 966). Claimant informed Mr. Atkinson that she had felt like hurting herself for the prior two years, but had made no attempts nor did she have any plans to do so. (*Id.*) Claimant stated that she visited Ms. Tebay for mental health treatment. (Tr. at 967).

On examination, Mr. Atkinson noted that Claimant's social rapport was variable, and her speech patterns tended to be relevant, coherent, and appropriate, but her pace was rapid and somewhat overproduced. (Tr. at 969). Claimant's affect was broad, and her mood was calm with an undercurrent of impatience and irritability. (*Id.*) Mr. Atkinson observed that Claimant's thought process, thought content, perception, insight, and judgment were average or normal. (*Id.*) Claimant's immediate memory was normal and her remote memory was broadly intact, but her delayed memory was moderately impaired, based on her ability to recall only two of four words. (Tr. at 970). Based on subtest scores from the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III"), Mr. Atkinson found that Claimant's concentration and attention were normal, and her

abstract reasoning was mildly impaired. (*Id.*) In addition, Mr. Atkinson opined that Claimant's persistence was average, but her psychomotor behavior was increased and her pace was slightly accelerated. (*Id.*) He determined that Claimant's social functioning was within normal limits based on his interaction with her, although he did note that Claimant rarely visited friends or went out for entertainment, and she seemed uneasy around other people. (Tr. at 970-71). Mr. Atkinson administered the Wide Range Achievement Test, which revealed that Claimant read and performed arithmetic at a sixth grade level. (Tr. at 970). He opined that the scores were valid and that Claimant was of normal intelligence. (*Id.*)

Overall, Mr. Atkinson described Claimant as "chronically depressed for a number of years and socially avoidant." (Tr. at 971). He diagnosed Claimant with depressive disorder, not otherwise specified; undifferentiated somatoform disorder; and avoidant personality traits. (*Id.*) He assigned a GAF score of sixty. (*Id.*) Claimant's prognosis was described as fair; however, Mr. Atkinson indicated that Claimant appeared "to be in a process of deterioration of general functioning over the past year." (Tr. at 972). Mr. Atkinson opined that Claimant's incapacity or disability was expected to last indefinitely; however, he concluded that Claimant's employment limitations were "primarily physical." (Tr. at 974).

On May 22, 2013, Christina Jackson, a therapist and provisionally licensed counselor for Westbrook Health Services, wrote a letter to Claimant's attorney explaining her opinion with respect to Claimant's ability to work. (Tr. at 1219-20). Ms. Jackson indicated that she had seen Claimant for individual therapy since September 2012. (Tr. at 1219). Ms. Jackson noted that Claimant was diagnosed by Mr. Zhang with major depressive disorder, recurrent, severe, without psychotic features; chronic pain with both

psychological and physical factors; opioid dependence, by prescription drugs; and sedative/hypnotic dependence, by prescription drugs. (*Id.*) According to Ms. Jackson, Claimant's attendance at group therapy helped her to become more social. (*Id.*) She remarked that Claimant had been "very participatory and compliant with treatment." (Tr. at 1220). Notwithstanding, Ms. Jackson opined that Claimant was unable to work due to her combination of physical and mental disabilities. (*Id.*)

## VI.   <u>Scope of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  <u>Discussion</u>

### A. The ALJ's RFC Finding and Controlling Hypothetical Question

In her first challenge, Claimant asserts that the ALJ's RFC finding failed to adequately address her moderate difficulty in maintaining concentration, persistence, or pace. Claimant contends that the ALJ erred by neglecting to include any limitations in the RFC finding and the hypothetical questions posed to the vocational expert related to Claimant's ability to focus and stay on task. For support, Claimant primarily relies on the Fourth Circuit's recent decision is *Mascio*.

In *Mascio*, the ALJ determined at step three that the claimant experienced moderate difficulties in maintaining concentration, persistence, or pace; however, the ALJ failed to include any mental limitations in the controlling hypothetical question presented to the vocational expert. 780 F.3d at 637-38. While the vocational expert supplied a list of jobs that were unskilled, the Fourth Circuit found that this was insufficient to account for the claimant's moderate mental limitations and held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The court indicated that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." [2] *Id.* Because the ALJ failed to either include any mental limitation in the RFC or explain why a "moderate limitation in concentration, persistence, or pace at step three d[id] not translate into a limitation" in the ALJ's RFC finding, the Fourth

---

[2] Listing 12.00 explains that "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § 404, Subpart P, App. 1, ¶ 12.00(C)(3).

Circuit found that remand was appropriate. *Id.*

The same issue was recently addressed by this Court in *Jackson v. Colvin*, No. 3:14-cv-24834, 2015 WL 5786802, at *4-*5 (S.D.W.Va. Sept. 30, 2015). There, the ALJ found that the claimant experienced moderate deficiencies in concentration, persistence, or pace. *Id.* at *1. Attempting to take this limitation into account, the ALJ restricted the claimant to work involving simple tasks and instructions; however, the Court recognized that this was inadequate under *Mascio*. *Id.* at *4. The Court explained the principle espoused in *Mascio*: "If the ALJ found [the claimant] had moderate mental limitations related to concentration, persistence, or pace—which here the ALJ found—the ALJ should have either included those limitations in the hypothetical or explained in the RFC assessment why, despite finding these moderate mental limitations, it was unnecessary to include them in the hypothetical. Failure to do so requires remand." *Id.* Because the ALJ did neither, the Court found that remand was appropriate.[3] *Id.* at *5.

In contrast, this Court found that *Mascio* did not require remand in *Evans v. Colvin*, No. 14-cv-29072, 2016 WL 1258491 (S.D.W.Va. Mar. 30, 2016). In *Evans*, the ALJ found that the claimant experienced moderate limitation in concentration, persistence, or pace at step three. 2016 WL 1258491, at *5. The ALJ's RFC finding limited the claimant to simple, routine tasks, and the Court found that this restriction accurately reflected the claimant's mental ability. *Id.* In describing the standard for reviewing an argument under *Mascio*, the Court observed that "[w]here the medical evidence shows that a claimant can carry out simple tasks, an ALJ's hypothetical to the vocational expert to that effect will sufficiently account for a claimant's moderate limitation in maintaining concentration,

---

[3] The Court noted that "what was pivotal in *Mascio* was not the claims or evidence presented in the agency proceeding, but the ALJ's finding [of moderate difficulties in concentration, persistence, or pace]." *Jackson*, 2015 WL 5786802, at *4.

persistence, and pace." *Id.* (quoting *Hurst v. Comm'r of Soc. Sec.*, 522 F. App'x 522, 525 (11th Cir. 2013)) (markings omitted). The Court determined that the claimant's mental health treatment records and the opinion of a state agency medical consultant supported the ALJ's finding that the claimant could perform simple, routine tasks, despite moderate limitation in concentration, persistence, or pace. *Id.* In the end, the Court concluded that "the ALJ explained why [the claimant's] moderate limitation in concentration, persistence, or pace at step three d[id] not translate into a limitation in [the claimant's] residual functional capacity, beyond restricting [the claimant] to unskilled work." *Id.*

The undersigned also recently examined the Fourth Circuit's *Mascio* decision on two occasions. First, in *Bailey v. Colvin*, the ALJ concluded at step three that the claimant suffered from moderate difficulty in maintaining concentration, persistence, or pace as a result of his depressive disorder and alcohol abuse, but "curiously downplayed [the claimant's] mental imitations when assessing his RFC." No. 5:14-cv-29435, 2015 WL 9595499, at *16 (S.D.W.Va. Dec. 4, 2015). The only restriction that the ALJ included in the RFC finding to account for the claimant's moderately deficient concentration, persistence, or pace was to eliminate jobs that involved detailed or complex instructions. *Id.* However, in light of *Mascio*, the undersigned found that this limitation did "not appear to directly address [the claimant's] ability to stay on task," and furthermore, "the ALJ never explained how that limitation, alone, was sufficient in [the claimant's] case." *Id.* Compounding the error, the ALJ's analysis of the claimant's mental limitations was "fractured and confused." *Id.* at *17. Ultimately, the undersigned recommended that the Commissioner's decision be reversed because "the ALJ's conclusion that [the claimant] could perform work involving simple instructions 'on a sustained basis' did not adequately address his determination that [the claimant] labor[ed] under moderate

difficulties in concentration, persistence, or pace," and the ALJ "failed to sufficiently explain and resolve th[e] apparent conflict." *Id.*

Second, the undersigned recommended remand based on *Mascio* in *Graham v. Colvin*, No. 3:14-cv-27280, 2015 WL 7752620 (S.D.W.Va. Nov. 13, 2015). In that case, the claimant argued that the ALJ's controlling hypothetical failed to account for the moderate difficulties in concentration, persistence, or pace that the ALJ found step three. *Id.* at *21. The undersigned agreed that the ALJ's RFC finding, which limited the claimant to simple, routine, and repetitive tasks, did not sufficiently address the claimant's limitations in concentration, persistence, or pace because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* at *22 (quoting *Mascio*, 780 F.3d at 638). Furthermore, because the ALJ "failed to sufficiently explain why additional limitations were not included in the RFC finding given his determination that Claimant labored under these moderate difficulties," the undersigned found that the Commissioner's decision should be reversed. *Id.*

Here, like all of the decisions discussed above, the ALJ found at step three that Claimant experienced moderate limitation in concentration, persistence, or pace. (Tr. at 355). The ALJ observed that Mr. Atkinson found Claimant's concentration and attention were normal based on the results of the WAIS-III subtests that he administered. (*Id.*) In addition, the ALJ pointed out that Mr. Atkinson determined Claimant's delayed memory was moderately impaired. (*Id.*) The ALJ also noted that Mr. Atkinson opined Claimant's persistence was average and her pace was slightly accelerated. (*Id.*) Regarding Dr. Dunn's evaluation of Claimant, the ALJ indicated that Dr. Dunn found Claimant's concentration, persistence, and pace to be normal. (*Id.*) However, the ALJ acknowledged that Dr. Dunn concluded Claimant's recent memory to be severely deficient and remote memory to be

moderately deficient. (*Id.*)

In the RFC discussion, the ALJ remarked that medication and therapy improved Claimant's mental health symptoms. (Tr. at 360). Citing treatment records from Westbrook Health Services, the ALJ found that Claimant's mental status examinations were generally normal. (*Id.*) With respect to the opinion evidence, the ALJ assigned little weight to Dr. Frethiem's and Dr. Hursey's opinions that Claimant's mental impairments did not significantly limit her ability to perform work because the record contained "a number of diagnoses made by treating and examining mental health professionals." (Tr. at 352, 361). Additionally, the ALJ noted that Claimant reported symptoms of "crying spells, feeling hopeless and overwhelmed by situational stressors, sadness, anxiety, unease around others, irritability, focus on somatic complaints, disturbed sleep, and lack of motivation." (Tr. at 352).

The ALJ also assigned little weight to Ms. Jackson's opinion that Claimant was unable to work because her opinion relied on Claimant's subjective complaints and, in part, on an assessment of Claimant's physical limitations, which the ALJ indicated Ms. Jackson was not qualified to assess. (Tr. at 361-62). Likewise, the ALJ assigned little weight to Mr. Atkinson's opinions that Claimant's disability or incapacity was expected to last indefinitely and that Claimant's employment limitations were "primarily physical." (Tr. at 362). The ALJ reasoned that Mr. Atkinson's opinion as to Claimant's physical limitations was outside of his area of expertise and based on Claimant's subjective physical complaints. (*Id.*) Further, the ALJ pointed out that Mr. Atkinson had assigned a GAF score of sixty to Claimant, which indicated "moderate impairment at best." (*Id.*)

Lastly, the ALJ found that Claimant's GAF scores demonstrated her mental health symptoms were moderate or she experienced moderate difficulty in functioning due to

her mental impairments. (*Id.*) The ALJ assigned the GAF scores "some weight," concluding that the scores were generally consistent over time and among multiple treaters or examiners. (*Id.*) Ultimately, the ALJ found that Claimant's mental impairments caused her moderate difficulties. (Tr. at 363).

Having reviewed the ALJ's written decision, the undersigned **FINDS** that the ALJ failed to explain how Claimant's moderate limitation in concentration, persistence, or pace was addressed by limiting her to understanding, remembering, and carrying out simple instructions. As the Fourth Circuit recognized in *Mascio*, restricting a claimant to simple instructions alone does not typically account for a moderate limitation in concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638 ("[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."). When a moderate limitation in maintaining concentration, persistence, or pace is found to exist by an ALJ, the ALJ should explain how that limitation is addressed by the RFC finding or why the limitation does not require an additional restriction in the RFC finding. Here, the ALJ did not review Claimant's concentration, persistence, or pace in his RFC discussion. While the ALJ cited evidence at step three cutting against a finding of moderate limitation in the functional area, he nevertheless found that Claimant was moderately limited. (Tr. at 355). Indeed, the ALJ rejected medical opinion evidence concluding that Claimant's limitation in concentration, persistence, or pace was only mild. (Tr. at 361). Once the ALJ found a moderate limitation, he should have examined Claimant's ability to maintain concentration, persistence, or pace in the RFC discussion. *See McDonough v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-1090, 2016 WL 2770875, at *3 (D. Md. May 13, 2016) (remanding Commissioner's decision where ALJ's step three discussion indicated mild or

no limitations in concentration, persistence, or pace, but ALJ ultimately found moderate limitation and failed to explain how restricting claimant to unskilled and simple work accounted for claimant's difficulties in concentration, persistence, or pace); *Williamson v. Colvin*, No. 1:14CV884, 2016 WL 1735889, at *7-*8 (M.D.N.C. May 2, 2016) (recommending remand where ALJ found moderate limitation in concentration, persistence, or pace, despite medical opinion evidence indicating claimant was not limited in that functional area, and ALJ failed to explain how limiting claimant to simple, routine tasks with no "production pace work" addressed claimant's ability to stay on task). Rather than examine the issue, the ALJ's RFC discussion generally emphasized that Claimant experienced moderate limitations based on the findings of Claimant's treaters and examiners. (Tr. at 362-63). In the end, the ALJ neglected to explain how limiting Claimant to simple instructions addressed her moderate mental limitations, particularly with respect to concentration, persistence, or pace.

To the extent that the ALJ cited his step three discussion to support the RFC determination, the undersigned finds that the step three analysis is difficult to follow. On the one hand, the ALJ cited evidence that Mr. Atkinson and Dr. Dunn found Claimant's concentration, persistence, and pace to be mostly normal. (Tr. at 355). However, the ALJ also cited the examiners' conclusions as to Claimant's memory and emphasized that Claimant's memory was moderately or severely impaired. (*Id.*) Although courts seemingly disagree as to the relevance of a claimant's memory in determining ability to maintain concentration, persistence, or pace, even assuming that a claimant's memory is properly considered in assessing the functional area, the ALJ's step three analysis here never explained how he resolved the conflicting findings and arrived at a moderate limitation

in concentration, persistence, or pace.[4] Therefore, the ALJ's reliance on his step three analysis in the RFC discussion compounds a subsequent reviewer's confusion as to Claimant's mental limitations. In any event, as discussed above, the ALJ should have addressed Claimant's limitation in concentration, persistence, or pace after step three. Because he did not, the undersigned ultimately cannot discern whether the ALJ's RFC finding is supported by substantial evidence.

Lastly, the undersigned cannot conclude that the ALJ's error was harmless. The jobs used to support the ALJ's step five finding (security monitor and grader/sorter) seem to require some degree of sustained concentration, persistence, or pace. Indeed, the vocational expert testified that those jobs could *not* be performed by a person who would be "off task for completing even routine and repetitive tasks." (Tr. at 418). Clearly then, a limitation in concentration, persistence, or pace would affect Claimant's ability to perform the jobs identified by the ALJ at step five.

Because the ALJ's RFC discussion lacks an adequate explanation concerning Claimant's mental limitations and the undersigned cannot conclude that the ALJ's error was harmless, the undersigned **FINDS** that the ALJ's decision at step five is not supported by substantial evidence. *See Morgan v. Barnhart*, 142 F. App'x 716, 720-21 (4th Cir. 2005) ("The Commissioner can show that the claimant is not disabled only if the

---

[4] *Compare Burns ex rel. S.M.B. v. Colvin*, No. 2:14-1288, 2015 WL 4634992, at *5 (D.S.C. Aug. 3, 2015) (stating that it may be true memory "is relevant to evaluating concentration, persistence, and pace"), *and Gray v. Colvin*, No. 3:13-cv-1944, 2014 WL 4536552, at *19 (M.D. Pa. Sept. 11, 2014) (finding that Listing 12.00(C)(3) "allows for memory to be used as a consideration in evaluating concentration, persistence, and pace"), *with Pounds v. Astrue*, 772 F. Supp. 2d 713, 729-30 (W.D. Pa. 2011) (stating that findings regarding claimant's memory did not relate to claimant's concentration, persistence, or pace); *see also* 20 C.F.R. § 404, Subpart P, App. 1, ¶ 12.00(C)(3) ("On mental status examinations, concentration is assessed by tasks such as having you subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."). The undersigned notes that a Mental Residual Functional Capacity Assessment form used by the SSA separates the category of "Understanding and Memory," from "Sustained Concentration and Persistence." Form SSA-4734-F4-SUP.

vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities."). Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be remanded so that the ALJ may reconsider, or elaborate on his discussion of, Claimant's mental restrictions.

### B. The ALJ's Analysis of Claimant's Reported Symptoms

In her second challenge, Claimant argues that the ALJ erred in evaluating her credibility. Pursuant to 20 C.F.R. § 404.1529, the ALJ evaluates a claimant's report of symptoms using a two-step method. First, the ALJ must determine whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. 20 C.F.R. § 404.1529(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (effective March 16, 2016).[5] Instead, there must exist some objective "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" which demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b).

---

[5] The SSA recently provided guidance for evaluating a claimant's report of symptoms in the form of SSR 16-3p. In doing so, the SSA rescinded SSR 96-7p, 1996 WL 374186, which the parties relied on in their memoranda. The undersigned finds it appropriate to consider Claimant's second challenge under the more recent Ruling as it "is a clarification of, rather than a change to, existing law." *Matula v. Colvin*, No. 14 C 7679, 2016 WL 2899267, at *7 n.2 (N.D. Ill. May 17, 2016); *see also Morris v. Colvin*, No. 14-CV-689, 2016 WL 3085427, at *8 n.7 (W.D.N.Y. June 2, 2016).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* § 404.1529(a). If the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2016 WL 1119029, at *5-*6. In evaluating a claimant's statements regarding his or her symptoms, the ALJ will consider "all of the relevant evidence," including (1) the claimant's medical history, signs and laboratory findings, and statements from the claimant, treating sources, and non-treating sources, 20 C.F.R. § 404.1529(c)(1); (2) objective medical evidence, which is obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, *id.* § 404.1529(c)(2); and (3) any other evidence relevant to the claimant's symptoms, such as evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and any other factors relating to functional limitations and restrictions due to the claimant's symptoms. *Id.* § 404.1529(c)(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2016 WL 1119029, at *4-*7. In *Hines v. Barnhart*, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges he suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ. SSR 16-3p, 2016 WL 1119029, at *5.

SSR 16-3p provides further guidance on how to evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of his or her symptoms. For example, the Ruling stresses that the consistency of a claimant's own statements should be considered in determining whether a claimant's reported symptoms affect his or her ability to perform work-related activities. *Id.* at *8. Likewise, the longitudinal medical record is a valuable indicator of the extent to which a claimant's reported symptoms will reduce his or her capacity to perform work-related activities. *Id.* A longitudinal medical record demonstrating the claimant's attempts to seek and follow treatment for symptoms may support a claimant's report of symptoms. *Id.* On the other hand, an ALJ "may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record," where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints," or "the individual fails to follow prescribed treatment that might improve symptoms." *Id.*

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can

assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *9. SSR 16-3p instructs that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person"; rather, the core of an ALJ's inquiry is "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* at *10.

When considering whether an ALJ's evaluation of a claimant's reported symptoms is supported by substantial evidence, the Court does not replace its own assessment for those of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Because the undersigned has recommended that this case be remanded for the reasons above, a detailed discussion of Claimant's second challenge is unnecessary. Nevertheless, the undersigned concludes that the ALJ's analysis complied with the applicable Regulation and Ruling. The ALJ thoroughly considered the objective medical evidence, Claimant's treatment records, Claimant's alleged symptoms, and Claimant's statements regarding her abilities and activities. (Tr. at 355, 357-60). The ALJ analyzed the consistency of Claimant's allegations when compared with the clinical observations

and findings. The ALJ also compared Claimant's subjective complaints with the medical opinion evidence. (Tr. at 360-63). In assessing Claimant's statements regarding her symptoms, the ALJ cited specific record evidence and articulated the reasoning for his finding that Claimant's statements were not entitled to full weight. The ALJ was not required to explicitly discuss each factor described in 20 C.F.R. § 404.1529(c) or SSR 16-3p; instead, the ALJ was obliged to supply logical reasons grounded in substantial evidence to support the weight that he assigned to Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms. *See Bailey*, 2015 WL 9595499, at *19; *Murdock v. Colvin*, No. 5:14CV40, 2014 WL 9866441, at *3 (W.D.N.C. Nov. 19, 2014). Ultimately, the ALJ did just that.

## VIII. <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 10), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 13); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Johnston, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** June 9, 2016

Cheryl A. Eifert
United States Magistrate Judge

35